**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MICHELE ARTINIAN,

                Plaintiff,             **MEMORANDUM OF**
                                         **DECISION & ORDER**
       -against-              16-cv-4404 (ADS)

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.
--------------------------------------------------------X

FILED
CLERK

1/12/2018 3:42 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**<u>APPEARANCES:</u>**

**The DeHaan Law Firm P.C.**
*Attorney for the Plaintiff*
300 Rabro Drive East, Suite 101
Hauppauge, NY 11788
      By:    John W. DeHaan, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
      By:    Candace S. Appleton, Assistant United States Attorney

**SPATT, District Judge**:

On August 8, 2016, the plaintiff, Michele Artinian (the "Plaintiff" or the "Claimant"), commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the defendant, Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that she is ineligible to receive Social Security disability insurance ("SSDI") and supplemental security income ("SSI") benefits.

1

Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings. For the reasons that follow, the Plaintiff's motion is granted in part, and the Defendant's motion is denied.

## I. BACKGROUND

On April 25, 2013, the Plaintiff applied for SSDI benefits under the Act, alleging that she has been disabled since February 4, 2013. On August 7, 2013, the Plaintiff applied for SSI benefits alleging the same date of disability onset.

Her claims were denied on August 12, 2013, and she requested a hearing eight days later. The Plaintiff appeared with counsel before Administrative Law Judge April Wexler (the "ALJ") on October 9, 2014. On November 25, 2014, the ALJ issued a written decision in which she found that the Plaintiff was not entitled to SSDI or SSI benefits under the Act.

The Plaintiff sought a review by the Appeals Council, which denied her request on June 1, 2016. The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of the Plaintiff's request for review.

On August 8, 2016, the Plaintiff filed the instant action. The parties submitted the matter as fully briefed to the Court on May 1, 2017.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II.  DISCUSSION

**A.  The Standard For Benefits Under The Act**

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person may only be disabled if his, "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520.  *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999).  The Claimant bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Claimant is capable of working.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa,* 168 F.3d at 77.  *See also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or non-disability can be made, the [Social Security Administration] will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L. Ed. 2d 333 (2003).

Under the five-step sequential evaluation process, the decision-maker decides:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920.  When conducting this analysis, the ALJ must consider the objective medical facts; the diagnoses or medical opinions based on these facts; the subjective evidence of pain and disability; and the claimant's age, background, education and work experience.  *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

## B.  The Standard Of Review

"Judicial review of the denial of disability benefits is narrow" as "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard."  *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179-81 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 504(g).  *See also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."); *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (describing review of the Commissioner's decision as a requiring "two levels of inquiry").  The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case *de novo*."  *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir.

2004)).  Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id*. (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [claimant's] view."  Instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*."  *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis in original).  In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would *have to conclude otherwise*.'"  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).  This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts."  *Pena v. Barnhart*, No. 01-cv-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Burgess v. Astrue*, 537 F.3d 117, 127-28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the

Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (summary order) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might understandably have reached a different result upon a *de novo* review. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

**C. Application To The Facts Of This Case**

The Plaintiff asks this Court to remand the case back to the Commissioner for further proceedings to remedy what the Plaintiff believes was a deprivation of a full and fair ALJ hearing. *See Cruz v. Barnhart*, 343 F. Supp. 2d 218, 220 (S.D.N.Y. 2004) (stating that before a court analyzes the merits of a Social Security case, "[t]he reviewing court 'must first be satisfied that the claimant has had a full hearing under the regulations and in accordance with the beneficent purposes of the [Social Security] Act'" (quoting *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir. 1990) (internal citations omitted))). Alternatively, the Plaintiff seeks that the matter be remanded for a hearing before a different ALJ. *See, e.g.*, *Kolodnay v. Schweiker*, 680 F.2d 878, 879-80 (2d Cir. 1982); *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 223 (E.D.N.Y. 1998). *See also* 20 C.F.R. § 404.940 ("[A]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party…").

The Plaintiff contends that she was deprived of a full and fair hearing because (1) the ALJ improperly determined that the Plaintiff's mental impairments did not meet the criteria in Listing 12.04; (2) the ALJ incorrectly assessed the medical evidence in violation of the treating physician's

rule; and (3) the ALJ mischaracterized the Plaintiff's chronic fatigue syndrome. The Court will address each of these issues in turn.

### 1. As To Whether Substantial Evidence Supports A Finding That The Plaintiff's Impairments Meet Or Equal The Requirements Of Adult Listed Impairment 12.04

The Plaintiff claims that her bipolar I disorder meets or equals the requirements of Listed Impairment 12.04, Affective Disorders. The Defendant contends that substantial evidence supports the ALJ's conclusion that her impairments do not meet or exceed any listed impairment, including 12.04. For the reasons set forth below, the Court concurs with the ALJ's determination.

At step three, the ALJ is required to determine whether the Claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). This determination is based solely on objective medical evidence; a diagnosis is not sufficient in and of itself. *See* 20 C.F.R. § 416.925(d) ("Can your impairment(s) meet a listing based only on a diagnosis? No. Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria of the listing."). If the impairment meets or medically equals one of the listed criteria, the claimant is considered disabled. If not, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

In order to qualify as a listing, an impairment must satisfy all of the listing's diagnostic criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891, 107 L. Ed. 2d 967 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify [as a Listing]"). The Plaintiff is responsible for meeting her burden for each of the criteria in the

relevant listing.  *See Medrano v. Colvin*, No. 15-cv-3081, 2016 WL 5255877, at *14 (E.D.N.Y. Sept. 21, 2016).

Listing 12.04 states, in relevant part:

12.04 Affective disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome, characterized by at least four of the following:

   a. Anhedonia or pervasive loss of interest in almost all activities; or

   b. Appetite disturbance with change in weight; or

   c. Sleep disturbance; or

   d. Psychomotor agitation or retardation; or

   e. Decreased energy; or

   f. Feelings of guilt or worthlessness; or

   g. Difficulty concentrating or thinking; or

   h. Thoughts of suicide; or

   i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome, characterized by at least three of the following:

   a. Hyperactivity; or

   b. Pressure of speech; or

   c. Flight of ideas; or

   d. Inflated self-esteem; or

   e. Decreased need for sleep; or

f. Easy Distractibility; or

g. Involvement in activities that have a high probability of painful consequences that are not recognized; or

h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the fully symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The Listing details clinical findings in paragraph A. If one or more of those findings are met, then

the requirements of *either* parts B or C must be met. 20 C.F.R. Pt. 220, App. 1.

The ALJ ruled that the Claimant did not have any impairment that met that listing, including bipolar I disorder. *See* R. at 14. Specifically, the Claimant's bipolar I disorder was evaluated under Section 12.04 and it was determined that:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing[] 12.04 … In making this finding, I have considered whether the "paragraph B" criteria are satisfied. … Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied. I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

R. at 14. In the instant action, the Plaintiff does not challenge the ALJ's decision as it pertains to paragraph C, but rather contests the findings regarding paragraph B. Upon a review of the record, the Court is satisfied that the ALJ's decision was based on a finding of substantial evidence.

ALJ Wexler evaluated the four components of "paragraph B" and determined that in each of them, the Plaintiff exhibited either mild or moderate restrictions. These findings are short of the "marked" difficulty required by the listing. *See* 20 C.F.R. Pt. 220, App. 1. The Plaintiff challenges the ALJ's findings as they relate to all of these components.

"Marked" is defined by the listings as "more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the Plaintiff's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpart P, Appx. 1 § 12.00C.

In the instant case, ALJ Wexler properly found that "[i]n activities of daily living, the claimant has mild restriction." *See* R. at 14. This conclusion is corroborated by the medical evidence in the administrative record. The ALJ refers to the medical opinion of Kathleen Acer, Ph.D., a consultative psychologist who, after examining her on July 10, 2013, noted that the

Plaintiff "can dress, bathe and groom herself. She can cook, clean, do laundry, shop, manage her own finances. … She spends her days getting dressed, she eats, she does household chores, she watches television, and she reads." R. at 276. The medical opinion of Chaim Shtock, D.O., a consultative orthopedist from the same medical practice, is also noted by the ALJ. Dr. Shtock reports that the Plaintiff lives independently and dresses, cooks, cleans, shops and grooms herself. R. at 279.

The medical opinions of both physicians are corroborated by the Function Report, a form filled out by the Plaintiff on May 20, 2013, *see* R. at 165-67, as well as the Plaintiff's own testimony during the ALJ hearing. *See* R. at 47-49. Namely, the Plaintiff testified that she lives alone; dresses and bathes herself; does her own laundry; uses her home computer; runs her own errands; and drives herself. *Id.* The Plaintiff failed to present any medical evidence to the contrary. *See* Plaintiff's Memorandum of Law in Support of her Motion for Judgment on the Pleadings ("Plaintiff's Brief") at 18. Based on the foregoing, the Court finds that substantial evidence reinforced ALJ Wexler's conclusion that the Plaintiff's impairments did not markedly restrict her ability to accomplish the activities of daily living.

Regarding subparagraph 2 of paragraph B, ALJ Wexler determined that "[i]n social functioning, the claimant has moderate difficulties." R. at 14. Social functioning is defined in the regulations as the ability "to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. Pt. 404, Subpart P, Appx. 1 § 12.00C.2. "Other individuals" include family, friends, neighbors and others who one may interact with in the course of daily living. *Id.* The ALJ's conclusion is corroborated by the medical evidence in the administrative record. The ALJ refers to the treatment notes of Satpal Rathour, M.D., a psychiatrist who noted multiple times throughout 2013 that the Plaintiff presented as attentive and fully

communicative.  *See* R. at 319-336.  As a result, the Court finds that ALJ Wexler's determination that the Plaintiff had moderate difficulty in social functioning is supported by substantial evidence in the administrative record.  *See, e.g.*, *Rosario v. Astrue*, No. 3:11-cv-314, 2012 WL 3728143, at *4 (D. Conn. Feb. 13, 2013) (upholding the ALJ's determination that the plaintiff, who had "a long history of incarceration, particularly for assault," exhibited moderate difficulties in social functioning).

Focusing on subparagraph 3 in paragraph B, ALJ Wexler ruled that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties."  R. at 14.  The ALJ's conclusion is corroborated by the medical evidence in the record.  Although the Plaintiff asserts that she has difficulty concentrating, the medical records are unsupportive of this contention.  ALJ Wexler relays the treatment notes of Dr. Rathour, which describe a patient with no attentional or memory issues.  *See, e.g.*, R. at 334.  Treatment notes from the South Shore Neurologic Associates also state that the Plaintiff's memory was intact.  *See, e.g.*, R. at 346, 353, 360.  The Court's examination of the administrative record found additional medical evidence to support the ALJ's conclusion.  *See, e.g.*, R. at 275 ("RECENT AND REMOTE MEMORY SKILLS: Intact.  Able to recall 3 out of 3 objects immediately and 3 out of 3 objects after a five-minute time delay, 7 digits forward and 5 digits back.").

As to the final subparagraph in paragraph B, the ALJ determined that "the claimant has experienced no episodes of decompensation, which have been of extended duration."  R. at 14.  "Episodes of decompensation" are defined as

> exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of

decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. Pt. 404, Subpart P, Appx. 1.

"[R]epeated episodes of decompensation, each of extended duration" is defined as three episodes within one year, or an average of once every four months, each lasting for a period of at least two weeks. *Id.* The ALJ's conclusion that the Plaintiff has not experienced an episode of decompensation is corroborated by the medical evidence in the administrative record. ALJ Wexler refers to the Plaintiff's own testimony, whereby she testified that she has never been hospitalized for any mental impairment. R. at 67. The Court also conducted a thorough examination of the record and found no medical evidence that the Plaintiff experienced an episode of decompensation during the relevant period. Accordingly, the Court finds that substantial evidence in the record supported the ALJ's conclusion that the Plaintiff had no episodes of decompensation.

As the Plaintiff does not challenge ALJ Wexler's decision as it pertains to paragraph C, and the burden of proof rests with the Plaintiff, the Court finds no reason to address it here. Accordingly, to the extent the Plaintiff seeks to overturn the ALJ's decision on the ground that her bipolar I disorder should have been found to meet the criteria to be classified under Medical Listing 12.04, her motion for judgment on the pleadings is denied.

The Court notes that,

although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination. Accordingly, because this is not a case "in which we would be unable to fathom the ALJ's rationale in relation to the evidence in the record," there is no need for us to remand this case to the ALJ for clarification.

*Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010) (quoting *Berry*, 675 F.2d at 469). Therefore, the Court finds that the ALJ's conclusion that the Claimant did not have an impairment that meets or medical equals the requirements of Listing 12.04 is proper.

### 2. As To Whether The ALJ Followed The Treating Physician Rule

#### a. As To Whether The ALJ "Cherry Picked" Portions Of The Record

First, as mentioned above, the Plaintiff argues that the ALJ committed error by assessing her RFC by "cherry picking" portions of the administrative record, while arbitrarily assigning less weight to others.

Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments is given "controlling weight," so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue*, No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014). Although, the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567-68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts. *Burgess*, 537 F.3d at 128. The ALJ must consider the following factors if it decides to afford less than controlling weight to a treating physician's opinion: "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129).

In the Second Circuit, the ALJ is required to "give good reasons in [her] notice of determination or decision for the weight [she] gives [a claimant's] treating source's opinion." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (internal citations omitted). The ALJ is not required to cite each factor explicitly in its decision, but must ensure it applies the substance of the rule. *Halloran*, 362 F.3d at 32. The ALJ cannot substitute "[her] own assessment of the relative merits of the objective evidence and subjective complaints for that of the treating physician." *Garcia v. Barnhart*, No. 01-cv-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003).

Federal courts reviewing administrative social security decisions decry "cherry picking" of relevance evidence, which may be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source. *See Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (citing *Fiorello v. Heckler*, 725 F.2d 174, 175–76 (2d Cir. 1983); *Ceballos v. Bowen*, 649 F. Supp. 693, 700 (S.D.N.Y. 1986)); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ was not permitted to 'cherry-pick' from [a physician's] mixed results to support a denial of benefits." (internal citations omitted)); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."). "'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Younes v. Colvin*, No. 1:14-cv-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (citing *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010)).

It is entirely proper for the ALJ to only credit portions of medical source opinions, or weigh different parts of the same opinion differently. *Id*; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). However, when the ALJ uses a portion of a given opinion to support a finding,

while rejecting another portion of that opinion, the ALJ must have a sound reason for the discrepancy. *See Fiorello*, 725 F.2d at 176 ("Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, we cannot accept an unreasoned rejection of all the medical evidence in the claimant's favor." (internal citations omitted)).

In the instant case, ALJ Wexler assigned "great weight" to the entirety of Dr. Acer's opinion, as well as much of Dr. Rathour's opinion in the process of determining the Plaintiff's mental RFC. *See* R. at 19-20. Dr. Acer was the consultative psychologist and Dr. Rathour was the Plaintiff's treating psychiatrist. ALJ Wexler determined that, in relevant part:

> [g]reat weight is assigned to the opinion of Dr. Rathour, as set forth above, as it is consistent with treatment notes. However, less weight is given to Dr. Rathour's opinion that the claimant has marked difficulties of social functioning, marked difficulties in maintaining concentration, persistence, or pace, and experience repeated episodes of decompensation, each of extended duration (Exhibit 14F), as it is inconsistent with treatment notes describing the claimant's behavior as "stable and uneventful and showing intact short and long term memory and no signs of attentional difficulties (Exhibit 14F; *see also* Exhibit 16F). The claimant also testified that she has never been hospitalized for psychiatric reasons.

R. at 19-20. The Plaintiff takes issue with this portion of the ALJ's ruling.

While the Plaintiff claims that a portion of Dr. Rathour's opinion was improperly accorded an incorrect weight, ALJ Wexler did not overlook or ignore evidence favorable to the Plaintiff. She gave great weight to the vast majority of Dr. Rathour's opinion, including the assessment that the Plaintiff had mild or moderate limitations regarding making occupational, performance and personal social adjustments. *See* R. at 313-14. This portion of Dr. Rathour's opinion, the Court finds, is consistent with the administrative record and was accorded appropriate weight by ALJ Wexler.

The ALJ did assign less weight to the portions of Dr. Rathour's opinion that were inconsistent with the administrative record. In the Second Circuit, it is the ALJ's responsibility to

resolve conflicts present in the administrative record. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("[The ALJ] was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Byrne v. Berryhill*, -- F. Supp. 3d --, No. 16-cv-3134, 2018 WL 317842, at *4 (E.D.N.Y. Jan. 5, 2018) (Spatt, J.) ("In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that 'genuine conflicts in the medical evidence are for the ALJ to resolve.'" (quoting *Gunter*, 361 F. App'x at 199)); *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012); *McGowan v. Astrue*, No. 07-cv-2252, 2009 WL 792083, at *8 (E.D.N.Y. Mar. 23, 2009). ALJ Wexler exercised this discretion by examining Dr. Rathour's treatment notes and other medical opinion evidence and then explaining which portions of Dr. Rathour's medical opinion was being accorded less weight and why that portion of the opinion was weighed differently than the rest of his opinion.

ALJ Wexler specified that she assigned less weight to Dr. Rathour's opinion that the Plaintiff has marked difficulties of social functioning. R. at 19. In support of this finding, the ALJ cited inconsistencies in Dr. Rathour's own treatment notes, *see, e.g.*, R. at 313-336, as well as the treatment notes of other physicians and medical professionals. *See, e.g.*, R. at 341-367. Specifically, the record demonstrated that the Plaintiff was attentive, oriented, alert and fully communicative. She was properly groomed, fully communicative and exhibited stable behavior. *See, e.g.*, R. at 325-29, 346-47, 366. As such, there is substantial evidence for the ALJ's conclusion as it pertains to social functioning. The Plaintiff's claim, therefore, fails with respect to the cherry picking of evidence from Dr. Rathour as it relates to social functioning.

The ALJ also accorded less weight to the portion of Dr. Rathour's opinion where he opined that the Plaintiff has marked difficulties in maintaining concentration, persistence or pace. R. at

19. This conclusion is validated by the medical evidence in the administrative record. Here, the ALJ again cited inconsistencies in Dr. Rathour's treatment notes, *see, e.g.*, R. at 313-336, as well as treatment notes from additional medical personnel. *See, e.g.*, R. at 341-367. Dr. Rathour's treatment notes indicated that the Plaintiff had no memory or attentional issues during any of their sessions. *See, e.g.*, R. at 334. Treatment notes from other medical professionals also corroborated the findings in Dr. Rathour's notes. *See, e.g.*, R. at 346, 353, 360. The Court finds that there is substantial evidence for ALJ Wexler's conclusion that less weight must be accorded to Dr. Rathour's opinion as it pertains to difficulties in maintaining concentration, persistence or pace. The Plaintiff has failed to successfully allege that the ALJ cherry picked evidence to come to such a conclusion.

The final portion of Dr. Rathour's opinion to which the ALJ conferred less weight, was the conclusion that the Plaintiff has experienced repeated episodes of decompensation, each of extended duration. R. at 19. ALJ Wexler's choice of weight finds support in Dr. Rathour's own treatment notes, *see, e.g.*, R. at 313-336; treatment notes from other medical personnel who treated the Plaintiff, *see, e.g.*, R. at 341-367; and the Plaintiff's own testimony before the ALJ that she was never hospitalized for any of her mental impairments. R. at 67. Further, the Court's review of the record found *no evidence* that could lead the ALJ to conclude that the Plaintiff has experienced a single episode of decompensation for extended duration, let alone repeated episodes. As such, there is substantial evidence for the ALJ's conclusion as it pertains to episodes of decompensation.

The ALJ's determination to assign great weight to the majority of Dr. Rathour's opinion and assign limited weight to those that were inconsistent with the administrative record is further bolstered by the medical opinion of Dr. Acer, a consultative psychologist. ALJ Wexler determined

that Dr. Acer's medical opinion was entitled to great weight. R. at 20. In the Second Circuit, the ALJ is entitled to rely upon the opinions of consultative examining physicians, as they may constitute substantial evidence if the administrative record supports them. *See Rosier v. Colvin*, 586 F. App'x 756, 758 (2d Cir. 2014) (summary order); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute [ ] substantial evidence."); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995); *Mongeur*, 722 F.2d at 1039 ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence." (internal citations omitted)); *Frawley v. Colvin*, No. 5:13-cv-1567, 2014 WL 6810661, at *9 (N.D.N.Y. Dec. 2, 2014) ("The opinions of consultative examiners … may constitute substantial evidence where, as here, it is supported by the medical evidence in the record.").

An ALJ is permitted to accord greater weight to a consultative examiner's opinion if the conclusions are more consistent with the medical evidence. *See, e.g.*, *Rivera v. Colvin*, No. 13-cv-7150, 2015 WL 1027163, at *16 (S.D.N.Y. Mar. 9, 2015). Here, Dr. Acer's opinion is "based on a complete examination of the claimant and is consistent with treatment notes [in the record]." R. at 20. Dr. Acer's medical opinions were consistent with her treatment notes, which depicted a patient who was alert and oriented with fully intact memory skills, average cognitive functioning, a coherent and goal oriented thought process with fluent, clear speech. Dr. Acer further noted that the Plaintiff successfully lived alone and dressed, bathed and groomed herself. "With regard to [her] vocational capacities at this time, there are no limitations in her ability to follow and understand directions and instructions, maintain attention and concentration, maintain a regular schedule, learn and perform complex tasks independently." R. at 276.

In an effort to challenge the ALJ's RFC conclusions as they relate to the Plaintiff's mental impairments, the Plaintiff argues that there is evidence in the administrative record that supports the elements of Dr. Rathour's opinion that were assigned lesser weight. However, whether or not there is substantial evidence that may support an alternative conclusion is irrelevant at this stage. If the ALJ's decision is supported by substantial evidence, the inquiry is terminated. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (quoting *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). As the ALJ's conclusions regarding Dr. Rathour's medical opinion are supported by substantial evidence, the existence of support to alternative findings is extraneous.

The Plaintiff further argues that the ALJ failed to discuss the factors required by the regulations and set forth in 20 C.F.R. § 404.1527(c)(2). However, the Court finds that the ALJ complied with the substance of the treating physician rule. *See Halloran*, 362 F.3d at 32; *Reyes v. Colvin*, No. 13-cv-4683, 2015 WL 337483, at *16 (S.D.N.Y. Jan. 26, 2015) ("Although the ALJ is required to explicitly consider all of the factors, the ALJ is not required to explicitly 'address or recite' each factor in [her] decision." (internal citations omitted)); *Duval v. Colvin*, No. 6:13-cv-495, 2014 WL 4637092, at *12 (N.D.N.Y. Sept. 16, 2014) ("[T]here is no requirement to recite and discuss each and every factor slavishly[.]"). The facts in the administrative record, together with the ALJ's explanation of her decision demonstrate a proper application of the treating physician rule as applied to the Plaintiff. *See Marquez v. Colvin*, No. 12-cv-6819, 2013 WL 5568718, at *12 (S.D.N.Y. Oct. 9, 2013) ("Although the ALJ did not explicitly recite the factors, his decision nonetheless adequately considered each factor[.]").

Accordingly, there is no basis to conclude that the ALJ improperly cherry picked evidence in the administrative record.

b. **As To Whether The ALJ Failed To Further Develop The Record**

The Plaintiff also alleges that the ALJ shirked her duty to further develop the record. Plaintiff's Brief at 22-24. Specifically, the Plaintiff contends that the ALJ failed to develop the record by not including medical records from medical professionals who were referenced in other portions of the administrative record.

> The duty to develop the record goes hand in hand with the treating physician rule, which requires the ALJ to give special deference to the opinion of a claimant's treating physician. An ALJ cannot, of course, pay deference to the opinion of the claimant's treating physician if no such opinion is in the record. Thus, consideration of the duty to develop the record, together with the treating physician rule, produces an obligation that encompasses the duty to obtain information from physicians who can provide opinions about the claimant. The ALJ must make reasonable efforts to obtain a report prepared by a claimant's treating physician even when the treating physician's underlying records have been produced.

*Paredes v. Comm'r of Soc. Sec.*, No. 16-cv-810, 2017 WL 2210865, at *17 (S.D.N.Y. May 19, 2017) (internal citations and quotation marks omitted). However, as long as the record contains adequate material regarding a plaintiff's RFC, remand is not required. *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (noting that the regulations do not require remand "when an ALJ fails in [her] duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's [RFC]"). Further, "[e]ven though the ALJ has an affirmative obligation to develop the record, it is the plaintiff's burden to furnish such medical and other evidence of disability as the Secretary may require." *Shaffer v. Colvin*, No. 1:14-cv-745, 2015 WL 9307349, at *2 (W.D.N.Y. Dec. 21, 2015) (quoting *Long v. Bowen*, No. 87-cv-2830, 1989 WL 83379, at *4 (E.D.N.Y. July 17, 1989) (internal citations omitted)).

In the instant matter, the Court does not believe that the ALJ's failure to obtain the wish list present in the Plaintiff's memorandum, *see* Plaintiff's Brief at 23-24, constitutes error or requires remand. At the ALJ hearing, ALJ Wexler left the record open for one week, as requested by the Plaintiff's attorney, in order for the Plaintiff to provide additional documentation to supplement the record. *See* R. at 68. If the Plaintiff believed additional medical records provided evidence of disability, the Plaintiff did not meet her burden to furnish them. Furthermore, an examination of the administrative record demonstrates a longitudinal record of the Plaintiff's treatment history. The vague references to additional records provide no indication that such documents would support the Plaintiff's claim of disability. "Here, the record reflects that the ALJ met [her] obligation to develop the record, and that, to the extent the record lacked any treatment notes…, plaintiff failed to meet her burden to provide those records." *Shaffer*, 2015 WL 9307349, at *2.

### c. As To Whether The ALJ Properly Applied The Treating Physician Rule To The Opinions Of Dr. Prashad

The Plaintiff's final argument, as it applies to the treating physician rule, is that the ALJ failed to obtain a medical opinion from Roy Parshad, D.O.. The Court disagrees that the ALJ failed to obtain a medical opinion, but for reasons detailed below, the Court finds that the ALJ committed legal error by not assigning any weight to Dr. Parshad's opinion.

Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1); 416.927(a)(2).

20 C.F.R. § 404.1502 lists the "acceptable medical sources" . . . "who can provide evidence to establish an impairment."  As to opinions from medical sources who are not acceptable medical sources and from nonmedical sources, the Act states:

> Opinions from medical sources who are not acceptable medical sources and from nonmedical sources may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources. Although we will consider these opinions using the same factors [applied to medical opinions] not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case. Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 404.1527(f)(1).  Taking these rules into account, the Act states that ALJs "generally should explain the weight given to opinions" from medical sources who are not acceptable medical sources and from nonmedical sources.  20 C.F.R. § 404.1527(f).  Dr. Parshad is a licensed medical physician, and therefore an acceptable medical source.  *See* 20 C.F.R. § 404.1527 (listing licensed medical physicians as acceptable medical sources).

Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  Accordingly, any diagnoses, prognoses, and statements about the severity and nature of impairments would be medical opinions.

The Second Circuit has not provided explicit guidance on the precise difference between treatment notes and medical opinions.  However, it is clear from the caselaw that they are two

separate categories; the Second Circuit has often held that the ALJ can disagree with doctors' medical opinions when they differ from treatment notes. *See, e.g., Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (holding that a court can give less weight to a treating source's medical opinion where the treatment notes contradict the opinion); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) (holding that the treatment notes of other doctors can be relied upon to override the medical opinion of a treating physician); *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) (holding that ALJ did not err in failing to obtain a formal medical opinion from the Plaintiff's treating psychiatrist where the ALJ relied on that doctor's treatment notes); *Cichocki*, 534 F. App'x at 75 (holding that the ALJ was not required to give controlling weight to treating physician's medical opinion where the treatment notes contradicted that opinion); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (holding that ALJ did not need to acquire a medical source statement from the treating physician when the ALJ had all of the treatment notes from the Plaintiff's treating physicians).

In the instant case, Dr. Parshad, a Rheumatologist at East End Rheumatology, treated the Plaintiff for "all over pain" in March and April 2013. Medical records regarding Dr. Parshad include statements reflecting medical judgments about the character and severity of her injuries, diagnoses, medical test results and recommendations for treatment. *See* R. at 209-33. He diagnosed the Plaintiff with Fibromyalgia, but noted that she also may have degenerative joint disease. R. at 209. She was prescribed a daily regimen of 20mg of Cymbalta and given a prescription for physical therapy. R. at 214.

In the Court's opinion, medical records regarding the Plaintiff's treatment by Dr. Parshad are more than treatment notes; they are medical opinions. *See, e.g., Polynice v. Colvin*, 576 F.

App'x 28, 31 (2d Cir. 2014) (summary order) (holding that a doctor's recording of the plaintiff's own reports of pain were mere treatment notes). Therefore, the Court finds that the portions of the administrative record related to Dr. Parshad were medical opinions within the definition of the Act and the subsequent regulations.

ALJ Wexler erred in not assigning any weight to the medical opinions of Dr. Parshad and for not considering the required factors under the Act. "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (quoting *Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998)); *accord Halloran*, 362 F.3d at 32 ("An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give the opinion." (citing 20 C.F.R. § 404.1527(d)(2))); *Perez v. Astrue*, No. 07-cv-958, 2009 WL 2496585, at *8 (E.D.N.Y. Aug. 14, 2009) ("Even if [the treating physician's] opinions do not merit controlling weight, the ALJ must explain what weight she gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician." (citing 20 C.F.R. § 404.1527(d)(2))). *See, e.g.*, *Torres v. Comm'r of Soc. Sec.*, No. 12-cv-330, 2014 WL 69869, at *1, *9 (E.D.N.Y. Jan. 9, 2014); *Branca v. Comm'r of Soc. Sec.*, No. 12-cv-643, 2013 WL 5274310, at *12 (E.D.N.Y. Sept. 18, 2013).

ALJ Wexler's opinion is bereft of any discussion concerning the weight, if any, which was given to the medical opinion of Dr. Parshad. The Commissioner's guidelines are clear that the ALJ must afford some weight to all medical opinions; and must either give controlling weight to the medical opinion or a treating source; or good reasons for not affording it controlling weight. 20 C.F.R. § 404.1527. Failure to do so is cause for remand. *Schaal*, 134 F.3d at 504. "[O]n this record, we cannot say with certainty what weight should be assigned . . . to the opinion of

plaintiff's treating physician, or whether further clarification of the record with these regulations in mind might alter the weighing of the evidence." *Id.*

Furthermore, the ALJ's failure to discuss the required factors under the Act also constitute legal error. In the Second Circuit, the ALJ is required to "give good reasons in [her] notice of determination or decision for the weight [she] gives [claimant's] treating source's opinion." *Clark*, 143 F.3d at 118 (internal citations omitted). Here, the ALJ ignored that obligation. As such, remand is appropriate.

Consequently, the Court finds that the ALJ committed legal error by failing to ascribe any weight to the medical opinion of Dr. Parshad. *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012) (summary order) ("[F]ailure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." (internal citations omitted)); *Stiggins v. Barnhart*, 277 F. Supp. 2d 239, 244 (W.D.N.Y. 2003) ("ALJ's legal analysis is erroneous since he does not properly evaluate whether the opinions of plaintiff's treating physicians were entitled to controlling weight, or any weight, pursuant to the regulations."). The Court is unable to address whether or not the ALJ's opinion on the issue of the Claimant's RFC is supported by substantial evidence because the ALJ committed legal error that requires remand. *Stango v. Colvin*, No. 3:14-CV-01007, 2016 WL 3369612, at *16 (D. Conn. June 17, 2016) ("[A] district court may not assess objections as to 'substantial evidence' where an ALJ decision is infected with legal error." (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Johnson*, 817 F.2d at 986)).

To be clear, the Court does not believe that the Dr. Parshad's medical opinions are incomplete or otherwise ambiguous. It does not seek clarification from the ALJ, but merely the proper application of the treating physician rule.

Accordingly, the Court remands the case to the ALJ so that the ALJ can address, with specificity, the treating records and medical opinions of Dr. Parshad and either 1) ascribe controlling weight to them or 2) provide relevant reasons for the weight they are to be given in accordance with the Act. *See Halloran*, 362 F.3d at 32–33.

### 3. As To Whether The ALJ Mischaracterized The Plaintiff's Fatigue

The Plaintiff further alleges that the ALJ improperly found during the second step that "the record does not show that [chronic fatigue syndrome] impose[s] more than minimal limitations on her ability to perform basic demands of work activity." Plaintiff's Brief at 24 (quoting R. at 12-13). As a result, the Plaintiff claims, the ALJ did not consider the Plaintiff's fatigue symptoms when evaluating her RFC. The Court disagrees.

ALJ Wexler specifically noted that "[i]n making [a] finding [of a RFC], I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p)." R. at 12. While the Plaintiff is correct that ALJ Wexler did not specifically note the Plaintiff's chronic fatigue syndrome when determining her RFC, such is not grounds for remand. This is because the administrative record demonstrates that he evaluated non-severe impairments, including chronic fatigue syndrome, as well as any resulting potential limitations, and concluded such impairments would result in limited limitations.

Further, there is substantial evidence supporting the ALJ's RFC determination. The ALJ specifically discussed the Plaintiff's chronic fatigue syndrome in her Step 2 analysis as well as her Step 4 RFC analysis. In her Step 2 analysis, the ALJ noted that the Plaintiff did not receive any treatment for her chronic fatigue syndrome. R. at 13. In her step 4 analysis, the ALJ also noted that the claimant testified to experiencing chronic fatigue. R. at 15. The Court concludes that ALJ Wexler correctly determined in her Step 2 analysis that the non-severe impairments resulted in

only minimal limitations in her ability to work; and in Step 4, considered possible limitations resulting from these impairments, including chronic fatigue syndrome.

4. **As To Whether To Remand To A Different ALJ**

The Plaintiff seeks to have the matter remanded to a different ALJ. Plaintiff's Brief at 25. Although the decision of whether to assign a case to a different ALJ is typically within the Commissioner's discretion, district courts have exercised discretion to require the Commissioner to choose a new ALJ on remand. *See Taylor v. Astrue*, No. 07-cv-3469, 2008 WL 2437770, at *5 (E.D.N.Y. Jun. 17, 2008). In making such a determination, the Court considers four factors:

> (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party.

*Alfaro v. Colvin*, No. 14-cv-4392, 2015 WL 4600654, at *12 (E.D.N.Y. Jul. 29, 2015). The Court has examined the entire administrative record and concludes that as a matter of law, there is no basis that mandates the assignment of a different ALJ.

### III. CONCLUSION

Accordingly, for the reasons stated above, the Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) is granted in part, and the Defendant's motion for judgment on the pleadings is denied. The case is remanded for further proceedings consistent with this opinion.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York

January 12, 2018

_____ */s/ Arthur D. Spatt* _____

ARTHUR D. SPATT

United States District Judge